432 S.E.2d 532

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Timothy Randall BELL, Defendant Below, Appellant.**

No. 21114.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1993.

Decided June 10, 1993.

Michael E. Froble, Bluefield, for appellant.

Darrell V. McGraw, Jr., Atty. Gen., Marcella Gower, Charleston, for appellee.

PER CURIAM:

This action is before this Court upon an appeal from the March 4, 1991, order of the Circuit Court of McDowell County, West Virginia. Two indictments were returned against the appellant, one in October, 1990, and the other in February, 1991. The appellant was charged in the first indictment with two counts of feloniously acquiring a controlled substance with prescriptions dated July 6 and July 20, 1990. In the second indictment, the appellant was charged with one count of feloniously acquiring a controlled substance with a prescription dated June 6, 1990. The appellant, Timothy Randall Bell, was convicted on those three counts of feloniously acquiring a controlled substance and sentenced to one to four years in prison on each of the three counts,

to run concurrently. The appellant raises seven issues on appeal: (1) the trial court erred by allowing the case to go to the jury despite the invalidity of the prescriptions; (2) the trial court erred by allowing the case to go to the jury despite the fact that the appellant received only 2.5 more milligrams of hydrocodone than the prescription originally called for; (3) the trial court erred by improperly joining the two separate indictments against the appellant; (4) the trial court erred by not declaring a mistrial based upon the prosecuting attorney's violation of appellant's fifth amendment right against self-incrimination by questioning him as to comments and actions occurring at the state police headquarters; (5) the trial court erred by not declaring a mistrial based upon the prosecuting attorney's improper questioning and commenting in reference as to whether the appellant stole a certain missing prescription dated July 20, 1990; (6) the trial court erred by not declaring a mistrial based upon the prosecuting attorney's improper questioning and commenting with respect to the appellant's occupation as a school bus driver; and, (7) the trial court erred by failing to properly consider the factors for probation when the appellant was sentenced. This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, the judgment of the circuit court is affirmed.

I.

The chronology of events leading up to the appellant's conviction is as follows:

In 1989–90, the appellant underwent three knee operations.

**May 29, 1990:** The appellant went to the office of Dr. Charito Flores complaining of pain and swelling in his knee. After examining the appellant's knee, Dr. Flores gave the appellant a prescription for Tylenol Number 3 to relieve the pain.

**June 6, 1990:** The appellant returned to Dr. Flores' office complaining that the Tylenol 3 was making him sick. The appellant requested she prescribe another medication for the pain. Dr. Flores then wrote the

appellant a prescription for Lorcet. The prescription was filled for Lorcet Plus at the Rite–Aid Pharmacy by pharmacist John Bell.[1]

**July 6, 1990:** The appellant returned to Dr. Flores' office complaining of knee pain. Again, Dr. Flores wrote the appellant another prescription for Lorcet.

**July 7, 1990:** The pharmacist filled the prescription dated July 6, 1990, with Lorcet Plus.

**July 20, 1990:** The appellant returned to Dr. Flores' office requesting more painkillers, because he was going on vacation. Dr. Flores wrote the appellant a prescription for Lorcet and Naprosyn. The appellant presented the prescription to the pharmacist to be filled. The pharmacist became suspicious when he began to fill the prescription for Lorcet Plus. The word "Plus," as the pharmacist noted, appeared as if it had been added to the prescription after it had been written by the physician. The pharmacist attempted to reach Dr. Flores but was unsuccessful. Nevertheless, he filled the prescription with the intent of calling Dr. Flores the next day to verify the prescription.

**July 21, 1990:** The pharmacist contacted Dr. Flores. Dr. Flores confirmed the pharmacist's suspicions. Dr. Flores said she had written the prescription for Lorcet and not Lorcet Plus. The pharmacist then contacted Trooper Thomas Calvin Jennings, and he gave the trooper a computer printout with the appellant's name and the particular drugs that the appellant had received from the pharmacy. The change in the prescription, from Lorcet to Lorcet Plus, enabled the appellant to obtain 7.5 milligrams of hydrocodone, compared with 5 milligrams of hydrocodone, as contained in Lorcet–HD.[2] The difference, as the pharmacist later attested to, could lead to

"one-and-a-half more times potential of the addicting manifestation."

**July 27, 1990:** Trooper Jennings met with Dr. Flores. Dr. Flores confirmed the fact that she did not write the appellant a prescription for Lorcet Plus. Trooper Jennings then arrested the appellant pursuant to an arrest warrant charging the appellant with feloniously acquiring a controlled substance. At the state police headquarters, during the booking process of filling out the paperwork and obtaining fingerprints, the appellant asked to see the July 20, 1990, prescription. Trooper Jennings handed the appellant the prescription. The appellant then claims that he stepped outside of the office to speak with his father, and when he returned the prescription was no longer lying on the trooper's desk. It was during the booking process that the prescription was lost.

**September, 1990:** The pharmacist received a subpoena to testify at trial. In reviewing the computer printouts on the appellant's pharmaceutical transactions, the pharmacist noticed an altered prescription dated July 6, 1990, for Lorcet Plus, which had been filled on July 7, 1990. The pharmacist informed Trooper Jennings of his discovery. Trooper Jennings confirmed the pharmacist's discovery by obtaining another statement from Dr. Flores that she did not prescribe Lorcet Plus for the appellant on that date.

The appellant was arrested a second time for feloniously acquiring a controlled substance with the July 6, 1990, prescription. After the second arrest, the appellant was suspended from his job as a school bus driver for the McDowell County Board of Education.

The pharmacist received a subpoena requesting that he bring the July 6 and July

1. Due to the fact that the appellant, Timothy Randall Bell, and the pharmacist, John Bell, have the same last name, Mr. John Bell will be referred to hereinafter as "the pharmacist" and Mr. Timothy Randall Bell will be referred to as "the appellant" in order to eliminate any confusion.

2. At trial, Dr. Flores testified that she thought the drug Lorcet contained 65 milligrams of pro-

poxyphene hydrochloride and 650 milligrams of acetaminophen. The pharmacist testified that the drug, by the name of Lorcet, no longer exists. The pharmacist went on to testify that if he receives a prescription requesting Lorcet, then he fills it with the replacement drug for Lorcet, Lorcet–HD. However, as designated on the prescription, the appellant received Lorcet Plus.

20, 1990, prescriptions to court. However, the pharmacist was unsure as to whether the subpoena read July 7, 1990, the day in which he filled the July 6, 1990, prescription, or June 6, 1990. The pharmacist then went back through the computer profile and discovered another prescription for Lorcet Plus on June 6, 1990.[3]

Based upon the above allegations, the appellant was charged with two counts of obtaining a controlled substance, hydrocodone, by misrepresentation, fraud, forgery, deception or subterfuge pursuant to an indictment for the July 6 and July 20, 1990, prescriptions. The prosecuting attorney was unaware of the third offense until he was preparing the pharmacist for trial.

On November 29, 1990, the jury was unable to reach a verdict and a mistrial was declared. The trial was rescheduled for March 4, 1991.

On February 19, 1991, the appellant was indicted by the grand jury for the June 6, 1990, prescription.

On March 4, 1991, the jury found the appellant guilty on all the charges brought against him, that is, the two counts contained in the first indictment for the July 6 and July 20, 1990, prescriptions, and the single count contained in the second indictment, resulting from the June 6, 1990, prescription.

The appellant was sentenced to one to four years in prison on each count, to run concurrently.

It is from his conviction of March 4, 1991, that the appellant appeals to this Court.

## II.

### A.

The appellant was convicted under *W. Va. Code*, 60A–4–403(a)(3) [1971] which provides, in relevant part, that "it is unlawful for any person knowingly or intentionally [t]o acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge[.]" Thus, the primary issue before this Court is whether the appellant wrote the word "Plus" on the prescription and by doing so violated *W. Va. Code*, 60A–4–403(a)(3) [1971].

The appellant's first two arguments will be discussed together. First, the appellant contends that the prescriptions were not lawful because they did not contain the necessary information as required by the State Board of Pharmacy, such as the patient's address, the doctor's DEA number, and they do not call for an existing drug. It should be noted that the appellant did not cite any authority to support his contention, nor does the brief contain a clear discussion of this issue.

Second, the appellant argues that he did not feloniously acquire the controlled substance, hydrocodone, by inserting the word "Plus" on the prescription, but rather, hydrocodone was to be given to him in any event. The pharmacist testified that Lorcet–HD contains 5 milligrams of hydrocodone while Lorcet Plus contains 7.5 milligrams of hydrocodone. The difference in the dosage of hydrocodone, as attested to by the pharmacist, could lead to "one-and-a-half more times potential of the addicting manifestation" which is a "significant difference" in the addictive quality of the drug. Thus, the appellant actually received an additional 2.5 milligrams of hydrocodone by writing the word "Plus" on the prescription which is more addictive than Lorcet–HD. As with the other related issues, the brief on this issue also lacks any citation of authority nor a clear discussion.

The focus of the crime in which the appellant was indicted and subsequently convicted, was the felonious acquisition of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge. Whether the State Board of Pharmacy reg-

---

**3.** In order to clarify the misunderstanding, the pharmacist explained at trial the pharmacy's computer lists the day the prescription was filled, and there is nothing to indicate the day the prescription was written. Mr. Bell continued by stating that the subpoena requested the July 6 and July 20, 1990, prescriptions and since there was no listing for a July 6, 1990, prescription, he thought the subpoena should have read June 6, 1990.

ulations require certain information to be included within a prescription is irrelevant and not at issue in this case. If the defendant acquired a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, the offense was committed.

■ The issue before this Court is whether the appellant feloniously acquired a controlled substance he was otherwise not entitled to by writing the word "Plus" on the prescriptions. After a thorough review of the record, we are of the opinion that there is sufficient evidence to support the appellant's conviction of feloniously acquiring a controlled substance in violation of *W.Va.Code*, 60A–4–403 [1971]. *See* syl. pt. 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978).

### B.

The third point of contention raised by the appellant is that the two indictments were improperly joined. More specifically, the appellant argues that the joinder of the October, 1990, indictment charging the appellant with two counts of feloniously acquiring a controlled substance, with the July 6 and July 20, 1990, prescriptions, and the February, 1991, indictment charging the appellant with one count of feloniously acquiring a controlled substance, with the June 6, 1990 prescription, was prejudicial. He asserts that the addition of the charge in the second indictment enhanced the credibility of the other two charges in the first indictment, as evidenced by the different jury verdicts.

■ Pursuant to Rule 13 of the *West Virginia Rules of Criminal Procedure*, "[t]he court may order two or more indictments ... to be tried together if the offenses, ..., could have been joined in a single indictment[.]" With respect to this rule, this Court has held:

A trial court may in its discretion order two or more indictments, or informations, or both, to be tried together if the offenses could have been joined in a single indictment or information, that is, the offenses are of the same or similar char-

acter or are based on the same act or transaction, or on two or more acts or transactions connected together or constituting a common scheme or plan.

Syl. pt. 5, *State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376 (1981). Obviously, the State alleged the appellant committed the same offense numerous times. If there had not been such confusion over the dates of the prescriptions, all three charges would have been brought within one indictment. We, therefore, find that joinder of the two indictments was proper.

### C.

The fourth point of contention raised by the appellant is that Trooper Jennings' testimony regarding the whereabouts of the July 20, 1990, prescription was inadmissible pursuant to *W.Va.R.Evid.* 404(b).

Trooper Jennings testified, in response to the prosecutor's questions on direct examination, that during the time the appellant was at the state police headquarters following his arrest and his request to see an attorney, the appellant asked to see the July 20, 1990, prescription. Trooper Jennings said that he handed the appellant the prescription but then he never saw it again. The appellant admitted, in response to the prosecutor's questions on cross-examination, that Trooper Jennings handed him the prescription, he looked at it but then he returned the prescription to the trooper's desk. The appellant asserts that through this line of questioning the prosecutor attempted to prejudice the jury by inferring that the appellant had stolen the July 20, 1990, prescription. This argument is not persuasive.

The State intended to introduce a photocopy of the July 20, 1990, prescription into evidence since the whereabouts of the original prescription were unknown. The trial court denied the appellant's pre-trial motion to suppress the photocopy of the July 20, 1990, prescription and a motion in limine regarding the allegations that the appellant destroyed the original July 20, 1990, prescription.

■ We have more recently recognized the trial court's discretion in ruling upon

the admissibility of evidence in syllabus point 4 of *State v. Farmer*, 185 W.Va. 232, 406 S.E.2d 458 (1991):

' "Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk*, W.Va. [171 W.Va. 639, 643], 301 S.E.2d 596, 599 (1983).' Syl. pt. 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983).

After reviewing the transcript of the evidence and testimony in question in light of the whole record, we do not believe that the trial court abused its discretion by allowing such testimony to be admitted at trial.

We further find that the State's remaining evidence was more than sufficient to support the jury's finding of guilt. Moreover, if we consider the evidence in its entirety, the testimony in question is in no way prejudicial to the appellant's case, because it does not tend to prove nor disprove the ultimate question which is whether the appellant forged the word "Plus" on the June 6, July 6 and July 20, 1990, prescriptions in order to feloniously acquire a controlled substance.

Another point of contention raised by the appellant, concerning the July 20, 1990, prescription, is that the appellant's fifth amendment rights were violated when Trooper Jennings and the appellant were questioned at trial by the prosecutor regarding the whereabouts of the original prescription. The appellant asserts that since he invoked his *Miranda* rights by asking to see an attorney at the state police headquarters, the prosecutor's questioning, regarding the appellant's comments at the state police headquarters after his arrest, violated his constitutional rights.

■ The State correctly points out that "the fifth amendment privilege against self-incrimination and the corresponding *Miranda* warnings only prohibit the use of evidence obtained during questioning of an investigatory nature, i.e., questions concerning the crime itself and the suspect's role in it." *United States v. Taylor*, 799 F.2d 126, 129 (4th Cir.1986).

■ In the instant case, it is clear that the exchange which took place between Trooper Jennings and the appellant was not of an investigatory nature. The appellant was not subjected to interrogation per *Miranda*. *See, e.g., State v. Judy*, 179 W.Va. 734, 738, 372 S.E.2d 796, 800 (1988), ("While the defendant was admittedly in custody, he was not subjected to interrogation as contemplated by *Miranda*. The officer to whom the statement was made did not put questions to the defendant. . . . [T]he police did not engage in any conduct which was likely to produce the inculpatory statement.") The only exchange which took place between the trooper and the appellant was the request by the appellant to see the prescription, and the trooper then handed the prescription to the appellant. This was a simple exchange which did not jeopardize the appellant's innocence or guilt. Thus, the evidence elicited at trial did not violate the appellant's fifth amendment rights.

### D.

Next, the appellant argues that the second trial should have been declared a mistrial based upon improper questions asked and comments made by the prosecuting attorney regarding the appellant's occupation as a school bus driver. On re-cross-examination by the prosecuting attorney, the appellant testified that he was taking pain medication while employed as a school bus driver for the McDowell County Board of Education. In closing, the prosecuting attorney asserted that it was the State of West Virginia who was victimized by the appellant's wrongdoings in that the appellant was responsible for transporting children to and from school. The appellant asserts that he was unfairly prejudiced by the prosecutor's questions and comments, and thus, the trial court abused its discretion by failing to apply the balancing test of Rule 403 of the *West Virginia Rules of Evidence*.

*W.Va.R.Evid.* 403 (1993) provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair preju-

dice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The appellant argues that the prosecutor's questioning of the appellant and commenting in her closing argument, regarding the appellant's occupation as a school bus driver, were irrelevant. Furthermore, the appellant argues that unfairly prejudicial evidence "appeals to the jury's sympathies, arouses its sense of horror, and provokes its instinct to punish[.]" *See* Weinstein and Berger, *Weinstein's Evidence,* § 403[03], at 403–33, 34 (1985). The State replies by asserting that the questions and comments were in response to issues raised on direct examination concerning the appellant's suspension from his job.

 After reviewing the transcript of the proceeding, it is clear that the questions and comments of the prosecutor were not error and in no way a determining factor in the outcome of the trial. Furthermore, this Court has held that "[a] judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. pt. 5, *State v. Ocheltree,* 170 W.Va. 68, 289 S.E.2d 742 (1982). As such, we find this assignment of error to be without merit, and the ruling of the trial court will not be disturbed.

### E.

Finally, the appellant argues that he was wrongfully denied probation. Specifically, the appellant argues that the judge was improperly influenced by the fact that the appellant was a school bus driver, and therefore, the judge neglected to make the appropriate findings regarding his eligibility for probation. The appellant claims that the guidelines in order to determine the appellant's eligibility for probation are set forth in *State v. Nicastro,* 181 W.Va. 556, 383 S.E.2d 521 (1989). However, the clear language of syllabus point 5, of *Nicastro,* specifically relates to situations in which a defendant has been convicted of delivery of less than 15 grams of marihuana.

"The decision of a trial court to deny probation will be overturned only when, on the facts of the case, that decision constituted a palpable abuse of discretion." Syl. pt. 2, *State v. Shafer,* 168 W.Va. 474, 284 S.E.2d 916 (1981). Having reviewed the record before us, it does not appear that the trial judge abused his discretion in refusing the appellant probation, and therefore, no error exists.

Accordingly, the judgment of the Circuit Court of McDowell County is affirmed.

Affirmed.