476 S.E.2d 200

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Billy Joe HOTTLE, Defendant Below, Appellant.**

No. 23094.

Supreme Court of Appeals of West Virginia.

Submitted May 1, 1996.

Decided July 17, 1996.

Dennis V. DiBenedetto, Prosecuting Attorney for Grant County, Petersburg, for Appellee.

Timothy M. Sirk, Keyser, for Appellant.

PER CURIAM.

Billy Joe Hottle appeals his August 12, 1994 conviction by jury of two felony murders, two attempted murders in the first degree, one kidnapping, one attempted aggravated robbery and three grand larcenies. No recommendation of mercy was made by the jury. On appeal, Mr. Hottle alleges the following assignments of error: (1) ineffective assistance of counsel; (2) prejudicial joinder; (3) admission of evidence of unrelated crimes; (4) failure to give instructions about and verdict form for second degree murder; and (5) failure to disqualify the

prosecuting attorney because of personal interest. Based on our examination of the record, we find that the claim of ineffective assistance of counsel is premature and that the other assignments of error are without merit, and therefore, we affirm Mr. Hottle's convictions.

## I.

### FACTS AND BACKGROUND

On August 5, 1993, Mr. Hottle escaped from the Work Release Center in Cass, West Virginia, and thereafter he was joined by Craig Swick, his cousin, who walked away from a work release center in Charleston, West Virginia on August 15, 1993. After his escape, Mr. Hottle stayed in Fayette County until August 18, 1993 when he, accompanied by his cousin, returned to his home area of Petersburg and Grant County. On the night of August 19, 1993, Mr. Hottle allegedly stole a truck parked in front of a 7–Eleven store. Alerted by the truck's owner, the police chased the truck until it was wrecked. Mr. Hottle, Mr. Swick and Mr. Hottle's girlfriend, the truck's occupants, escaped capture. On August 21, 1993, Mr. Hottle's girlfriend left the Grant County area and returned alone to Fayette County.

Allegedly, shortly after Mr. Hottle's girlfriend left, Mr. Hottle, accompanied by his cousin, stole another truck in which a .22 caliber Ruger semi-automatic pistol had been left. After abandoning the second truck, apparently because of mechanical problems, Mr. Hottle walked to the residence of Leon Miller and Donna Ours, arriving there after 10:15 p.m. on August 22, 1993. Early on August 23, 1993, the bodies of Mr. Miller and Ms. Ours were found. Mr. Miller was found outside; he had been shot three times in the head. Ms. Ours was found in her bed; she had been shot three times, twice in the head. Ms. Ours' yellow GEO Storm automobile was missing; however, the yellow GEO Storm was seen late on August 22, 1993, traveling at high rate of speed headed toward Mineral County.

Shortly after midnight on August 23, 1993, a yellow GEO Storm and two men, matching the descriptions of Mr. Hottle and Mr. Swick, were seen at a 7–Eleven store in Keyser, Mineral County, West Virginia. The 7–Eleven clerk was found dead shortly thereafter; her body was in a locked storeroom. She had been shot once in the head. Subsequent ballistics testing confirmed that the .22 caliber Ruger pistol was the murder weapon in all three deaths.

On August 23, 1993, the police contacted Mr. Hottle's girlfriend in Fayette County. After she was taken into custody, the police searched the area around her house on the morning of August 24, 1993 and found Ms. Ours' yellow GEO Storm parked in a wooded area behind Mr. Hottle's girlfriend's house. On August 26, 1993, Mr. Hottle, allegedly accompanied by his cousin, forced a minister with his wife and granddaughter to drive them from Fayette County to Grant County.

On August 27, 1993 in Petersburg, a woman notified the police that she had encountered but eluded Mr. Hottle. Mr. Hottle, allegedly accompanied by his cousin, went to a local automobile dealership where they attempted to get vehicle keys from the dealership's employees. After the police converged on the dealership, Mr. Hottle, using an employee as a shield, attempted to escape by forcing the employee to drive away from the dealership.[1] During this attempt, Mr. Hottle was shot and the employee/hostage was injured. When Mr. Hottle was captured, he still had the .22 caliber Ruger pistol in his possession.

Mr. Hottle was indicted in Grant County on two counts of felony murder in the deaths of Mr. Miller and Ms. Ours, one count of kidnapping the dealership employee/hostage, two counts of attempted murder of police officers, one count of attempted aggravated robbery and three counts of grand larceny involving three vehicles. Shortly after Mr. Hottle's arrest, counsel was appointed. After a five day trial in August 1994, the jury found Mr. Hottle guilty on all charges. Based on the jury verdict, Mr. Hottle re-

---

1. After Mr. Hottle was taken into custody, Mr. Swick was found in a small room off the show-room and he was taken into custody.

ceived the following sentences: three life terms for two felony murder and one kidnapping convictions, two terms of not less than one nor more than five years for the two attempted murder convictions, a ten-year minimum term for the attempted aggravated robbery and three terms of not less than one nor more than ten years for three grand larceny convictions. Mr. Hottle's sentences were to run consecutively with any other sentences and with no recommendation of mercy.

Mr. Hottle appealed his convictions to this Court on July 19, 1995. Although his appeal petition outlined ten (10) assignments of error, Mr. Hottle, in his brief, discussed only the following five assignments of error: (1) ineffective assistance of counsel; (2) prejudicial joinder; (3) admission of unrelated crimes; (4) failure to give instructions about and verdict form for second degree murder; and (5) failure to disqualify prosecuting attorney because of personal interest.[2]

## II.

### DISCUSSION

#### A. *Ineffective Assistance of Counsel*

Mr. Hottle maintains that he was denied effective assistance of counsel because the State refused to house him near either the place of his trial or his attorney's office. Pending his trial, Mr. Hottle was incarcerated in the State Penitentiary at Moundsville. Several days before his trial, he was moved to the Huttonsville Correctional Center, and during his trial, Mr. Hottle was transported daily from Huttonsville to the Petersburg Courthouse. After each day's proceedings, Mr. Hottle was returned to Huttonsville,

each one-way trip taking one and one half hours. In his brief, Mr. Hottle maintains that his transportation to Huttonsville came immediately at the close of each day's proceedings.

Before trial, Mr. Hottle's counsel made about fifteen trips to Moundsville where they were able to confer for several hours. During trial, counsel was able to confer with the defendant during recesses.

In support of his argument of structural interference with the fundamental right to counsel, Mr. Hottle notes that counsel and client "must be able to confer as often as necessary." Mr. Hottle argues that he was prejudiced, because with more time, his "counsel obviously could have been better prepared and presented a better defense if significant and substantially more communication with his client would have been permitted." However, in his brief, Mr. Hottle acknowledged that "[t]here is not one incident, one witness, or one piece of evidence that can be pointed to more readily than any others as far as adequate time to prepare the Defendant's case."

In reply, the State notes that counsel had substantial access to Mr. Hottle because: (1) immediately after his arrest, Mr. Hottle remained in the area for several weeks because of medical treatment, and counsel was promptly appointed prior to September 8, 1993; (2) although Mr. Hottle was considered to require the secure environment of the State Penitentiary, the circuit court advised counsel that he would approve all payment requests to allow counsel to confer with Mr. Hottle; (3) Mr. Hottle was granted two continuances, one of which was because of Mr. Hottle's trial in Mineral County, in which he

---

2. The following assignments of error, although raised in Mr. Hottle's petition for appeal, were not addressed in his brief: (1) denial of his motion for a change of venue; (2) failure to disqualify the circuit judge because of personal interest; (3) denial of due process and equal protection because defendant was forced to wear a stun belt throughout the proceedings; (4) error in admitting a "manual" for the crimes written by Mr. Hottle; and (5) denial of his motion for a mistrial because of a witness' identification in another proceeding in another county.

Because these five assignments of error are not argued in Mr. Hottle's brief, we consider them to

be waived. We have long held that: "Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." Syl. pt. 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981); Syl. pt. 9, *State v. Garrett*, 195 W.Va. 630, 643 n. 22, 466 S.E.2d 481, 494 n. 22 (1995); *State v. George W.H.*, 190 W.Va. 558, 563 n. 6, 439 S.E.2d 423, 428 n. 6 (1993); Syl. pt. 9 *State v. Green*, 187 W.Va. 43, 415 S.E.2d 449 (1992); Syl. pt. 3, *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974) *overruled on other grounds, O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977).

was represented by the same counsel; (4) before Mr. Hottle's trial, his counsel advised the judge that "I believe at this point that would be adequate time to prepare, I should be ready;" (5) Mr. Hottle's opening statement was postponed until after counsel conferred with Mr. Hottle; and (6) during trial, Mr. Hottle arrived by 7 a.m. and did not leave until the conclusion of his conference with his counsel. The State also submitted counsel's itemized statement of legal services showing extensive conference time between Mr. Hottle and his counsel.

Recently, in *State v. Miller,* 194 W.Va. 3, 14–17, 459 S.E.2d 114, 125–128 (1995), we outlined the reasons most ineffective assistance of counsel assignments of error are "not ripe for direct appellate review." In this case, on direct appeal we are asked to considered whether the communication arrangements between the defendant and his attorney prohibited an effective assistance by counsel. In *State ex rel. M.S.B. v. LeMaster,* 173 W.Va. 176, 177, 313 S.E.2d 453, 454 (1984), we adopted the Fourth Circuit's statement in *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir.), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968) of the controlling structural principles regarding effective assistance of counsel:

> Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial. An omission or failure to abide by these requirements constitutes a denial of effective representation of counsel unless the state, on which is cast the burden of proof once a violation of these precepts is shown, can establish lack of prejudice thereby. [footnote omitted]

In *State ex rel. M.S.B. v. LeMaster,* 173 W.Va. at 178, 313 S.E.2d at 455, we noted that prejudice to a defendant is a requirement for finding ineffective assistance of counsel because of structural interference.

As the Fourth Circuit noted in *Coles, supra,* the state can usually defeat a claim of ineffective assistance of counsel by demonstrating that there was *no prejudice to the defendant.* This same principle was recognized in West Virginia's jurisprudence in the case of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974) where we stated: "If counsel's error, proven to have occurred, would not have changed the outcome of the case, it will be treated as harmless error." *Id.* 157 W.Va. at 665, 203 S.E.2d at 461. [Emphasis added.]

In this case, we note that we do not have a complete record before us concerning the transportation arrangements and communications, and we have no allegation of specific prejudice to the defendant; rather, we are urged to look for cumulative error. In Syl. pt. 5 of *State v. Miller,* we stated:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Similar to *State v. Miller,* we are unable intelligently to determine the merits of this ineffective assistance of counsel "claim without an adequate record giving trial counsel" the opportunity to outline how his lack of communication with his client, before and during the trial, hampered the defense. 194 W.Va. at 17, 459 S.E.2d at 128. Today's decision "does not foreclose further development of the ineffectiveness of counsel issue on a post-conviction collateral attack, if that procedure is available to the defendant. Nor do we hold that upon a properly developed record the claim of ineffective counsel would be without merit." 194 W.Va. at 17, 459 S.E.2d at 128.

■ As we stated in *State v. Miller,* "[t]he very nature of an ineffective assistance of counsel claim demonstrates the inappropriateness of review on direct appeal." 194 W.Va. at 15, 459 S.E.2d at 126. In this case, we are not directed to a particular incident of denied communication, but rather, a general restriction is argued. Because we lack an adequate record, we find this issue is not ripe for direct appellate review. *See State v. LaRock,* 196 W.Va. 294, 310, 470 S.E.2d 613, 629 (1996); *State v. Garrett, supra* note 2, 195 W.Va. at 645, 466 S.E.2d at 496; *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152 (1995); *State v. Honaker,* 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101 n. 4 (1994); *State v. Triplett,* 187 W.Va. 760, 771, 421 S.E.2d 511, 522 (1992) (rarely does this Court . . . find ineffective assistance of counsel . . . on a direct appeal).

### B. Improper Joinder

Mr. Hottle argues that joinder was improper because there is no common scheme or other element connecting the various charges against him. Mr. Hottle maintains that because the events took place over several days, the charges should have been divided based on three (3) general periods. The first period, several days before the other alleged events, involved the theft of the trucks and the .22 caliber Ruger pistol. The second period involved the alleged murders, the breaking and entering and the theft of the yellow GEO Storm. The final period involved events occurring at the Petersburg dealership about one week later. Mr. Hottle alleges that the "sheer number of charges would likely cause any juror to consider the Defendant a bad guy from the very start . . . [and] any indication of guilt on one or more of the charges, the perceived general propensity to commit a crime, would cause the jurors to convict on the remaining charges with or without adequate evidence."

The State argues that in this case joinder was proper because "the entire purpose and motivating force behind the various offenses with which the Appellant was charged, was this plan or design developed by the Appellant and Swick to raise havoc in their home community." The State also notes that except for the first vehicle theft, the evidence of the .22 caliber Ruger pistol and/or the yellow GEO Storm connects the events and helps identify Mr. Hottle.

Rule 8(a)(1981) of the W.Va.R.Crim.P. compels joinder when the offenses have the same or similar character, or are based on the same transaction, or constitute parts of a common scheme or plan.[3] Syl. pt. 4 of *State v. Mitter,* 168 W.Va. 531, 285 S.E.2d 376 (1981) states:

"A defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transactions, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan." Syllabus Point 1, *State ex rel. Watson v. Ferguson,* [166] W. Va. [337], 274 S.E.2d 440 (1980).

*See* Syl. pt. 3, *State ex rel. Forbes v. Canady,* 197 W. Va. 37, 475 S.E.2d 37 (1996) (Rule 8(a) "compels the prosecuting attorney to charge in the same charging document all offenses based on . . . constituting parts of a common scheme or plan, whether felonies, misdemeanors or both, provided that the offenses occurred in the same jurisdiction. . . .").

■ Even when joinder is proper under Rule 8, the circuit court may order separate trials under Rule 14(a)(1981) of the W.Va. R.Crim.P. on the grounds that such joinder is prejudicial to the defendant.[4] The ques-

---

**3.** Rule 8(a)(1981), W.Va.R.Crim.P., states, in pertinent part:

*Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character. All offenses based on the same act or transaction or on two or more acts

or transactions connected together or constituting parts of a common scheme or plan shall be charged in the same indictment or information in a separate count for each offense, whether felonies or misdemeanors or both.

**4.** Rule 14(a)(1981), W.Va.R.Crim.P., states, in pertinent part:

tion of whether to grant severance rests in the sound discretion of the circuit court. Syl. pt. 6 of *State v. Mitter, supra* states:

> The joinder of related offenses to meet possible variance in the evidence is not ordinarily subject to a severance motion. In those other situations where there has been either a joinder of separate offenses in the same indictment or the consolidation of separate indictments for the purpose of holding a single trial, the question of whether to grant a motion for severance rests in the sound discretion of the trial court.

*See State v. McGinnis,* 193 W.Va. at 161 n. 20, 455 S.E.2d at 530 n. 20; Syl. pt. 3, in part, *State v. Hatfield,* 181 W.Va. 106, 380 S.E.2d 670 (1988)("The decision to grant a motion for severance pursuant to W. Va. R. Crim. P. 14(a) is a matter within the sound discretion of the trial court."); *see also* Syl. pt. 5, *State v. Mitter, supra;* Syl., *State v. Eye,* 177 W.Va. 671, 355 S.E.2d 921 (1987)(trial court has discretion to join indictments based on "a common scheme or plan").

In the case *sub judice,* the State maintained that the various alleged crimes were linked by a common plan or scheme with common factual details concerning the .22 caliber Ruger pistol and the yellow GEO Storm. Because of the common plan and common factual details, information about the other incidents was inescapable, and therefore, according to the State, severance would have been without value. According to the State, Mr. Hottle wrote a "manual" detailing his plan for revenge, a plan which outlined many of the events which occurred.[5] In addition, except for the theft of the first truck, all the other events were connected with either the yellow GEO Storm or the .22 caliber Ruger pistol. Both of the Grant County murders were committed with a .22 caliber Ruger pistol that was still in Mr. Hottle's possession when he was arrested.

The yellow GEO Storm was seen at various crime scenes and Mr. Hottle was identified as one of the men in the automobile.

■ Based on our examination of the record, we find sufficient evidence of a common plan or scheme and common evidence connecting the events for the circuit court to deny Mr. Hottle's motion for severance. Because the circuit court did not abuse its discretion in denying Mr. Hottle's motion for severance, we find no merit in this assignment of error.

### C. Evidence of Unrelated Crimes

Mr. Hottle's next assignment of error concerns the admission of evidence of unrelated crimes in an adjoining county, which allegedly were committed by Mr. Hottle. Mr. Hottle maintains that the alleged crimes in the adjoining county were not related and that evidence of them was highly prejudicial. Mr. Hottle notes that pages 203 through 240 of the transcript contain "great detail about the facts and circumstances surrounding that [Mineral County] homicide."

The State maintains that the evidence of the Mineral County crimes was minimal. Of the five witnesses who testified concerning the Mineral County crimes, three witnesses testified about seeing a yellow GEO Storm with two men inside. Another witness' testimony was limited to the chain of custody for various exhibits. The final witness who was testifying about the chain of custody for the shell cases found at the 7–Eleven store in Mineral County, was asked about the condition of the 7–Eleven clerk. After the witness answered that the clerk was dead from "a gunshot wound to the front of the forehead," Mr. Hottle's counsel objected. The circuit court sustained the objection and instructed the jury to "disregard his comments about what he found and why he was there."

---

*Offenses.* If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of the counts or provide whatever other relief justice requires.

**5.** One of the assignments of error waived by Mr. Hottle concerned the admission of the defen-

dant's "manual" into evidence. *See* Syl. pt. 3, *State ex rel. Allen v. Bedell,* 193 W.Va. 32, 454 S.E.2d 77 (1994)(rulings on admissibility of evidence are largely within the circuit court's sound discretion and should not be disturbed unless there has been an abuse of discretion); Syl. pt. 2, *State v. Bell,* 189 W.Va. 448, 432 S.E.2d 532 (1993)(per curiam).

The State maintains that this evidence was presented to establish the time frame for the murders of Mr. Miller and Ms. Ours. Mr. Miller was last seen alive between 10:15 p.m. to 10:25 p.m. on August 22, 1993 and Ms. Ours' yellow GEO Storm was seen with two men inside en route to Mineral County between 11:00 p.m. and 11:30 p.m. that same day. The gun shell casings found at the Mineral County 7–Eleven were matched to the .22 caliber Ruger pistol found in Mr. Hottle's possession. In its charge to the jury, the circuit court instructed the jury on the limited purpose of the incidents in Mineral and Fayette Counties, and the jury was given a second cautionary instruction that was offered by the defense.

Rule 404(b) (1994) of the W.Va.R.Evid. "is an 'inclusive rule' in which all relevant evidence involving other crimes or acts is admitted at trial unless the sole purpose for the admission is to show a criminal disposition. (Citation omitted.)" *State v. Edward Charles L.,* 183 W.Va. 641, 647, 398 S.E.2d 123, 129 (1990). Rule 404(b) states:

> *Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

In Syl. pt. 1 of *State v. Edward Charles L.,* we stated:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W.Va.R.Evid. 404(b)

*See also* Syl. pt. 12, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974); *State v. McGinnis,* 193 W.Va. at 154, 455 S.E.2d at 523; *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).

■ Evidence of other crimes must be confined to that which is necessary to accomplish its legitimate purpose. *See* Syl. pt. 1, *State v. Spicer,* 162 W.Va. 127, 245 S.E.2d 922 (1978)(excessive evidence about rapes of the victims not admissible as part of the same transaction exception). Syl. pt. 1 of *State v. McGinnis, supra* states:

> When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

Syl. pt. 2 of *State v. McGinnis,* states:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986) [*overruled on other grounds, State v. Edward Charles L., supra* ]. After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient

showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

*See* Syl. pt. 3, *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996)(with proper safeguards including a limiting instruction, "[i]t is presumed a defendant is protected from undue prejudice").

In the case *sub judice,* the circuit court held an *in camera* hearing, during which evidence concerning the yellow GEO Storm, its occupants and the .22 caliber Ruger pistol, was determined to be relevant. When the evidence went beyond the limited scope, the jury was immediately instructed to disregard the irrelevant evidence, and the limiting instruction was repeated in the circuit court's general charge to the jury and again in one of the defense instructions.

■ We have long held that "[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk,* 171 W.Va. 639, 643, 301 S.E.2d 596, 599 (1983), *overruled on other grounds, State v. Jenkins,* 191 W.Va. 87, 93, 443 S.E.2d 244, 250 (1994); Syl. pt. 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983); Syl. pt. 1, *State v. Broughton,* 196 W.Va. 281, 470 S.E.2d 413 (1996); Syl. pt. 9, *TXO Production Corp. v. Alliance Resources Corp., supra; State v. McGinnis,* 193 W.Va. at 159, 455 S.E.2d at 528; Syl. pt. 3, *State ex rel. Allen v. Bedell,* 193 W.Va. 32, 454 S.E.2d 77 (1994); Syl. pt. 1, *Capper v. Gates,* 193 W.Va. 9, 454 S.E.2d 54 (1994). After reviewing the record, with special attention given to the circuit court's instructions limiting consideration of extraneous matters, we find that the circuit court did not abuse its discretion by allowing limited information about the alleged incident in Mineral County to be presented to the jury. *State v. LaRock, supra; State v. McGinnis, supra.*

### D. Second Degree Verdict Form

Mr. Hottle argues that the jury should have been instructed about and presented with the option of returning second degree murder convictions. In his testimony, Mr. Hottle acknowledged that he killed both Mr. Miller and Ms. Ours, but Mr. Hottle claimed that Mr. Miller had confronted and threatened him with a knife. Mr. Hottle also said that, based on his belief that someone might emerge armed from the Miller/Ours home to investigate the noise caused by his confrontation with Mr. Miller, he went into the Miller/Ours home and was surprised by a person in a dark room and blindly shot in the direction of the noise, thereby killing Ms. Ours who was sleeping in her bed. Based on Mr. Hottle's testimony showing what he considered to be "obviously sudden, simultaneous circumstances which the Defendant certainly did not design, contrive, or control in any way," he requested instructions about and verdict forms for second degree murder.

The State notes that from the indictment through the trial, the State proceeded on felony murder charges and that a second degree murder verdict is not a lesser included offense in felony murder. The question presented to the jury by the State was whether Mr. Hottle had committed the murders during the commission or attempted commission of a breaking and entering. Mr. Hottle was not indicted for or tried on first degree murder, which must be willful, deliberate or premeditated.

■ W. Va. Code 61–2–1 (1991) provides that "[m]urder ... in the commission of, or attempt to commit ... breaking and entering ... is murder of the first degree."[6] In this

---

6. In its entirety, W. Va. Code 61–2–1 (1991) provides:

*Murder* by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or *in the commission*

case, Mr. Hottle was indicted for felony murder [7] and the jury was instructed on felony murder and not willful, deliberate or premeditated murder. In Syl. pt. 1 of *State v. Walker*, 188 W.Va. 661, 425 S.E.2d 616 (1992), we reaffirmed the distinction between the two categories of first degree murder by stating:

"In a prosecution for first-degree murder, the State must submit jury instructions which distinguish between the two categories of first-degree murder—willful, deliberate, and premeditated murder and felony-murder—if, under the facts of the particular case, the jury can find the defendant guilty of either category of first-degree murder. When the State also proceeds against the defendant on the underlying felony, the verdict forms provided to the jury should also reflect the foregoing distinction so that, if a guilty verdict is returned, the theory of the case upon which the jury relied will be apparent." Syl. pt. 9, *State v. Giles*, 183 W.Va. 237, 395 S.E.2d 481 (1990).

 This case was tried on a felony murder theory, which "does not require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs accidentally during the commission of, or the attempt to commit, one of the enumerated felonies." Syl. pt. 7, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978). The State alleged that the murders of Mr. Miller and Ms. Ours occurred during the commission or attempted commission of breaking and entering. In essence, Mr. Hottle admitted to the murders but denied the underlying breaking and entering felony. Because the State proceeded solely on the felony murder theory, Mr. Hottle's instructions about and verdict forms for second degree murder, as a lesser included degree of homicide, were properly rejected under Syl. pts. 1 and 2 of *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982). Syl. pts. 1 and 2 of *State v. Neider*, *supra* state:

1. "The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." Syllabus Point 1, *State v. Louk*, [169 W.Va. 24] 285 S.E.2d 432 (1981) [*overruled on other grounds, State v. Jenkins, supra* ].

2. Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction.

Because of the State's decision to proceed solely on a felony murder theory, Mr. Hottle was not entitled to jury instructions on second degree murder because second degree murder is not a lesser included offense under a felony murder theory. In *State v. Walker*, 188 W.Va. at 667, 425 S.E.2d at 622 (although the State changed to only a felony murder theory by the close of evidence, the defendant, who had not sought an earlier election of theories, was not entitled to a jury instruc-

---

*of, or attempt to commit,* arson, kidnapping, sexual assault, robbery, burglary, *breaking and entering*, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four [§ 60A–4–401 et seq.], chapter sixty-a of this code, *is murder of the first degree.* All other murder is murder of the second degree.

In an indictment for murder and manslaughter, it shall not be necessary to set forth the manner in which, or the means by which, the death of the deceased was caused, but it shall be sufficient in every such indictment to charge that the defendant did feloniously, willfully, maliciously, deliberately and unlawfully slay, kill and murder the deceased. [Emphasis added.]

7. Mr. Hottle's indictment for the murder of Mr. Miller stated:

That BILLY JOE HOTTLE and CRAIG S. SWICK, did on or about the _____ day of August, 1993, in Grant County, West Virginia, unlawfully and feloniously, slay, kill and murder Leon F. Miller, during the attempt to commit breaking and entering and during the commission of burglary, in violation of West Virginia Code 61–2–1, and against the peace and dignity of the State.

Except for changing the victim's name to "Donna D. Ours," Mr. Hottle's indictment for the murder of Ms. Ours was identical.

tion of the lesser included offenses), we concluded that "if the prosecutor can make a valid felony murder case, then there is no error in the court's giving only the felony murder charge to the jury." *See State v. Manns*, 174 W.Va. 793, 800, 329 S.E.2d 865, 873 (1985) (because felony murder was the theory, "instructions on lesser included degrees of homicide and larceny in lieu of robbery were properly refused").

Because the State indicted and tried Mr. Hottle on felony murder, we find no error in the circuit court's refusal to instruct the jury and provide verdict forms for second degree murder.

### E. Disqualification of Prosecuting Attorney

Finally, Mr. Hottle contends that the prosecuting attorney should have been disqualified because his interest in this case was beyond his normal duty. Mr. Hottle maintains that Dennis DiBenedetto, Esq., the Prosecuting Attorney for Grant County, who continues to represent the State in this appeal, had known Mr. Hottle since Mr. Hottle was a young boy. According to Mr. Hottle's brief, Mr. Hottle had been prosecuted by Mr. DiBenedetto both as a juvenile and as an adult on several occasions. Mr. Hottle alleges that "there were strong and bitter feelings between the prosecutor and the Defendant . . . [which] is best evidenced by several heated exchanges occurring during the Defendant's testimony." Mr. Hottle alleges that the prosecuting attorney's theory was that Mr. Hottle "escaped from jail for the exclusive and specific purpose of killing the people he blamed for putting him in jail. At the top of the list, of course, was the Judge and the prosecuting attorney." [8] Mr. Hottle also alleges that during the trial he wrote the prosecuting attorney a letter threatening his life.[9] Mr. Hottle notes that according to his "manual," Mr. DiBenedetto, abbreviated as DEN, was a specific target for revenge. Mr. Hottle alleges that because Mr. DiBenedetto feared for his life and his family, he "was

prosecuting that case to make sure Billy Hottle went to prison forever, so as to ensure the safety of himself and his family."

The State argues that when Mr. Hottle's pretrial motion to disqualify the prosecuting attorney was made, there was no evidence showing that the prosecuting attorney had any special or extraordinary interest in this case. The only arguments presented in the disqualification motion were the general belief that Mr. DiBenedetto was "an intended 'victim'" and Mr. Hottle's threatening letter postmarked November 12, 1993. The State maintains that until Mr. Hottle testified, his targets were unknown, because when Mr. Hottle's "manual" was found, portions, including the list of targets, were missing. The State denies that "heated exchanges" took place during Mr. Hottle's testimony and notes that Mr. Hottle's counsel was provided with all information and discovery in the State's possession.

In *Nicholas v. Sammons*, 178 W.Va. 631, 363 S.E.2d 516 (1987), we noted that two general policy considerations underlie the necessity for prosecutorial disqualification. The first consideration is "that a prosecutor's duty is to obtain justice and not simply to convict;" and the second consideration is that a prosecutor's duty is to maintain "the public confidence in the criminal justice system . . . by assuring that it operates in a fair and impartial manner." *Nicholas v. Sammons*, 178 W.Va. at 632, 363 S.E.2d at 518. Based on these policy considerations, we stated in Syl. pt. 1 of *Nicholas v. Sammons*:

> Prosecutorial disqualification can be divided into two major categories. The first is where the prosecutor has had some attorney-client relationship with the parties involved whereby he obtained privileged information that may be adverse to the defendant's interest in regard to the pending criminal charges. A second category is where the prosecutor has some direct personal interest arising from animosity, a financial interest, kinship, or close friend-

---

**8.** *See supra* note 2 discussing Mr. Hottle's waiving of his argument concerning the disqualification of the judge by failing to address it specifically in his brief.

**9.** Although no threatening letter was found in the record at the citation provided by Mr. Hottle, Mr. Hottle did send the prosecuting attorney a threatening letter before trial.

ship such that his objectivity and impartiality are called into question.

When a prosecuting attorney "has a personal interest, as distinguished from a public interest, in convicting an accused, he or she may be disqualified." *State v. Pennington*, 179 W.Va. 139, 147, 365 S.E.2d 803, 811 (1987). *See Martin v. Leverette*, 161 W.Va. 547, 556, 244 S.E.2d 39, 44 (1978). In Syl. pt. 2 of *Nicholas v. Sammons*, 178 W.Va. 631, 363 S.E.2d 516 (1987), we stated:

> "Under circumstances where it can reasonably be inferred that the prosecuting attorney has an interest in the outcome of a criminal prosecution beyond ordinary dedication to his duty to see that justice is done, the prosecuting attorney should be disqualified from prosecuting the case." Syllabus Point 4, in part, *State v. Knight*, 168 W.Va. 615, 285 S.E.2d 401 (1981).

*See State ex rel. Tyler v. MacQueen*, 191 W.Va. 597, 447 S.E.2d 289 (1994) (recusal is proper when prosecuting attorney acquired any knowledge of facts through consultation with the accused); *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993)(prior representation of wife in a divorce action based on cruel and inhuman treatment disqualifies attorney from prosecuting the woman on malicious assault of her husband); *State v. Pennington, supra* (pretrial comments by a prosecutor which avoided discussing the merits of the case, without a showing of prejudice, do not necessarily disqualify a prosecutor); *State v. Knight, supra* (prosecutor should disqualify himself when defendant failed to make court-ordered restitution for a crime committed against the prosecutor); *Nicholas v. Sammons, supra* (past occasional representation of the victim-

ized bank is insufficient to disqualify prosecutor); *State ex rel. Moran v. Ziegler*, 161 W.Va. 609, 244 S.E.2d 550 (1978) (initial contact with defendant seeking to give himself up created a conflict of interest sufficient to disqualify a special prosecutor); *State v. Britton*, 157 W.Va. 711, 203 S.E.2d 462 (1974)(counseling a defendant about a plea agreement created a conflict of interest disqualifying a prosecutor).

■ Generally, when a prosecuting attorney and/or his family are among the intended victims, the prosecuting attorney should be disqualified because of personal interest. However, in this case, the prosecuting attorney maintains that he was unaware of his or his family's status as intended victims until Mr. Hottle testified. Nothing in the record before this Court supports any other conclusion. The parts of Mr. Hottle's "manual," which were in the prosecuting attorney's possession, contain no unambiguous reference to Mr. DiBenedetto.[10] At the time of the disqualification motion, although it was clear that revenge was one of Mr. Hottle's general motives, the specific targets of that revenge were not clearly identified, and no evidence was presented to indicate that the prosecuting attorney was an intended victim.

■ Based on the evidence presented in support of the motion for disqualification, we find no error in the circuit court's refusal to disqualify the prosecuting attorney. Subsequently discovered evidence of a defendant's threats to a prosecuting attorney that are not known to the prosecuting attorney are insufficient justification for an appellate reversal.[11] Because the evidence presented in

---

**10.** Page C of Mr. Hottle's "manual" contains the following reference to DEN, which Mr. Hottle testified meant Mr. DiBenedetto:

PRE OPERATIONAL PREPARATION
1. RECONNAISSANCE, WE NEED TO FAMILIARIZE OURSELVES WITH ALL PLACES, TIMES, DATES, COSTUMERS, AND THE WHERE ABOUTS OF THE LOCAL LAW ENFORCEMENT AGENCIES, FOR THE TIMES THAT CORRESPOND TO OUR OPERATIONS PLAN. THE PLACES ARE AS FOLLOWS.
 A. POTOMAC
 B. JUDY'S
 C. KEYSSAN

 D. *DEN*, AND, RAN, LAR, JOH
 E. OIL
 F. 101
 G. MOUNTAIN MART
 H. 4 WEST
 I. 7–11
 J. GRANT COM
 K. CITY OFFICE
 (Emphasis added.)

**11.** On August 1, 1994, Mr. Hottle sought a writ of prohibition from this Court directed at Mr. DiBenedetto and the circuit court judge seeking their disqualification based on allegations of special interest. By order entered August 2, 1994,

support of the motion for disqualification failed to show that the prosecuting attorney had an interest beyond the ordinary dedication to his duty, we find no merit in this assignment of error.

For the above stated reasons, we affirm Mr. Hottle's convictions.

Affirmed.

the Court determined that a rule to show cause should not be awarded and refused to award the requested writ.