359 S.E.2d 344

**STATE of West Virginia ex rel. Donald Mitchell KIDD**

v.

**Bobby LEVERETTE, as Warden, West Virginia Penitentiary.**

**No. 17146.**

Supreme Court of Appeals of West Virginia.

July 15, 1987.

Timothy N. Barber, Charleston, for appellant.

Charles King, Jr., Pros. Atty., Michele Rusen, Asst. Pros. Atty., Charleston, for appellee.

PER CURIAM:

This is an appeal by the State from a final judgment of the Circuit Court of Kanawha County rendered in a habeas corpus proceeding which declared the conviction of Donald Mitchell "Pete" Kidd void on the ground that he had been denied effective assistance of counsel at his trial.

On February 23, 1973, Pete Kidd, the defendant, was convicted of robbery by violence by a jury in the Circuit Court of Kanawha County and was sentenced to thirty years in the penitentiary. In March of 1974, the defendant filed a petition for a writ of habeas corpus alleging that his trial counsel had failed to file an appeal in his behalf. After a hearing on the matter, the defendant was resentenced on May 10, 1974 in order to extend the time for appeal;

his newly-appointed counsel filed an appeal in this Court on May 9, 1975, and it was subsequently refused.

On July 20, 1977, the defendant filed the present petition for a writ of habeas corpus. Up to this point, he had been incarcerated. After the filing of his petition, he was released on August 15, 1977 upon posting a $20,000 bond and has remained free under that bond since. An evidentiary hearing was held in the Circuit Court of Kanawha County on August 23, 1977 and was concluded the same day. No decision was rendered, however, until September 20, 1985, when the court wrote a letter to counsel informing them that the relief sought by the defendant would be granted. That letter was incorporated by reference into an order entered March 27, 1986 *nunc pro tunc.*

The facts relating to the underlying conviction are as follows. The defendant and Ronnie Caldwell were jointly indicted for the June 9, 1972 robbery of Charles Duncan. The evidence at trial was that Mr. Duncan, a resident of Oak Hill, was in Charleston to obtain license plates for his car and the car broke down. He was approached by a man he later identified as the defendant with an offer of assistance. They went to an apartment complex where they were joined by Ronnie Caldwell and on the way to Caldwell's truck, they stopped at a bar known as the Klondike Tavern. After drinking part of a beer Duncan became dizzy and asked the bartender to call a cab. He subsequently left the bar with the defendant and Caldwell, was driven down a dirt road, and robbed by the two men who beat and kicked him and took his wallet which Duncan testified contained $200.

After getting away from his assailants, Duncan ran to a nearby house and a cab was called at his request. He returned to his car which was now operating properly and drove home to Oak Hill. He returned to Charleston the following day and filed a complaint with the Charleston Police Department. Duncan then went back to the apartment complex where he and the defendant had met up with Ronnie Caldwell

and waited until he saw the two men who had robbed him. He called the police and Ronnie Caldwell was arrested. The appellee was arrested some time later in Chicago.

In addition to the victim's testimony, the State presented evidence from the bartender at the Klondike Tavern who testified that he saw Charles Duncan with the defendant at the tavern on June 9, 1972. The bartender recognized the defendant as a bouncer from the Hello Dolly Club. In addition, Jeff Gunnoe, a young man who witnessed the assault, identified the defendant as one of the robbers and a cab driver testified that he picked up Charles Duncan on the day of the robbery in "a pretty bad state," with torn clothes and blood on his mouth and lips.

Detective Larry Morris testified that the victim was unable to make a positive identification of his assailants from a group of photographs shown to him but did choose a photograph that "looked like his assailant." The photo was not of the defendant and since the victim made a positive identification of the defendant shortly thereafter, no attempt was made to locate the person in the photograph. Detective Sam Sampson testified that approximately one week after the robbery he showed the victim a photograph of the defendant which he had obtained from penitentiary officials at Moundsville and the victim made a positive identification.

Mr. Kidd's defense at his trial was that he had been with a friend, Wiley McClaskie, when the robbery occurred, first having dinner at the Sterling Restaurant and then attending a boxing match at the Charleston Civic Center. He denied that he knew the victim and knew Caldwell only as an acquaintance. Wiley McClaskie corroborated the defendant's story about the dinner and boxing match. In addition, the defense called a bartender at the Brass Rail who testified that the victim was in the bar on the day of the robbery and appeared to be intoxicated.

Following his conviction, sentencing, resentencing, and the denial of his appeal in this Court, the defendant filed the present

petition for a writ of habeas corpus in the Circuit Court of Kanawha County alleging ineffective assistance of counsel on the part of his trial counsel, Robert Perry, whom he had retained to represent him. At the evidentiary hearing on the petition, he basically asserted that Mr. Perry had refused any contact with him, either in person or by telephone, before, during and after the trial; that Mr. Perry failed to properly prepare and investigate the case; that he refused to call important witnesses at the trial; that he failed to discuss a plea bargain tendered by the prosecutor with the defendant even though Ronnie Caldwell, also a client of Mr. Perry's, pled guilty to grand larceny and received a much lighter sentence; that Mr. Perry refused to discuss trial strategy with the defendant; and that counsel's closing argument to the jury was outside the bounds of competent advocacy.

After hearing evidence on these issues, the trial court found that the defendant had been denied effective assistance of counsel. Specifically, the court found that Mr. Perry had no contact with the defendant for sixty (60) days after his arrest; that the next time the defendant saw his attorney was on the day of his trial; that Mr. Perry's secretary normally participated in preparation of trials but in this case she recalled no preparation and did not, in fact, have the trial listed on her calendar; that Mr. Perry did not learn until the date of trial that the prosecutor would elect to try the defendant on that date; that no pretrial motions were filed and no pretrial conferences conducted; that no investigation of the case was done by counsel and Mr. Perry instructed the defendant to obtain witnesses during an overnight recess; that Mr. Perry did not call Ronnie Caldwell, the co-defendant, as an alibi witness; and that documents filed in this Court by Mr. Perry indicated that, at the time of defendant's trial, he was suffering from a mental disability and was incapable of engaging in the proper practice of law.

▇ We set out the standard under which the effectiveness of counsel should be judged in Syllabus Point 19 of *State v.*

*Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974):

In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

In *Scott v. Mohn,* 165 W.Va. 393, 268 S.E.2d 117 (1980), the standards for determining the effectiveness of counsel were further developed when we set out six inquiries the court should make when ineffective assistance of counsel has been alleged. Those inquiries are whether:

1) counsel was promptly furnished to the accused;

2) counsel was afforded a reasonable time to prepare to defend the accused;

3) counsel promptly conferred and thoroughly discussed the facts and the law with the client, including but not limited to advising him of his rights, matters of defense, etc.;

4) counsel conducted any investigation of the facts and the law in preparation for trial;

5) counsel exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law; and,

6) any prejudice resulted to the accused in the event any of the above guidelines were not followed.

A failure to abide by these requirements may constitute a denial of effective assistance of counsel unless the State can establish lack of prejudice thereby. The trial court in this case found that Mr. Perry failed in meeting both the third and fourth requirements. A review of the evidence at the evidentiary hearing convinces us that the court's findings should not be disturbed.

■ Donna McCown, Mr. Perry's secretary at the time the defendant was tried, testified that she generally helped Mr. Perry prepare cases for trial but did not do so in this case. She remembered exhaustive preparation, however, in another criminal trial, around the same time period. Ms. McCown further testified that the defendant's trial was not listed on Mr. Perry's calendar and that during the year of 1973, Robert Perry was himself a defendant in a criminal proceeding.

The defendant testified next. He stated that he had a friend contact Robert Perry to represent him in 1972 and that he did not see Perry until sixty (60) days after that when he appeared at a bond hearing in October of 1972. The defendant testified that although he had made numerous attempts to contact Perry at his office, and had left messages and money with his secretary, he did not see his attorney again until the morning of his trial, February 20, 1973, and he saw him then because a friend of the defendant's informed him that Perry wanted to see him. When they met at the Charleston House Coffee Shop, Ronnie Caldwell was also present. After he talked to the prosecutor in the courtroom, Perry told the two that one of them was going to be tried that day. The defendant testified that it was at trial that he first learned of the date and place of the crime with which he was charged, and it was also at trial that Perry first obtained a copy of the indictment and police report. The defendant testified that he did not see Mr. Perry after his conviction until sentencing and that he never saw him after that even though he attempted to contact him about an appeal.

A prosecuting attorney in the original trial testified that although Robert Perry represented both defendants, the prosecutor elected to try the defendant first because the State had a stronger case against him. He testified that a plea bargain was offered to the defendant because of the effective job Perry was doing in handling the State's evidence and because the victim failed to appear at trial for his second day of testimony. The assistant prosecutor could not recall whether Perry looked at the State's file prior to trial and although he was sure that he had spoken to Perry about the case prior to trial he had no specific recollections of any such conversations.

Finally, during the evidentiary hearing, two Charleston attorneys were called to testify as experts in the practice of criminal law. Given a hypothetical set of facts objected to by the prosecutor, but allowed by the court who indicated that it "would weigh the answer accordingly, with a view to the fact that the question is possibly an impossible couch," both attorneys testified that the attorney did not exhibit the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law.

In syllabus point 1 of *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975), we held:

> Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong.

We do not find that the trial court's findings in this case are clearly wrong. The court clearly believed that the defendant was telling the truth. Even though Mr. Perry had a reputation in the community as an excellent trial lawyer, the evidence supports the court's finding that he did not exhibit that excellence in the defendant's trial and, in fact, failed to perform the necessary investigation and preparation to adequately represent the defendant.

Finally, the Court would note that this entire case is a comedy of errors. To the extent that it is a close case, the majority decides it in favor of the defendant because: (1) defendant served four years in the penitentiary; (2) the circuit court admitted defendant to bail and did not render a decision until eight years later; and, (3) the prosecutor failed to seek mandamus relief as he should have to force the trial court to

decide the case in a timely manner. Certainly the trial court was extraordinarily derelict in its failure to act in a timely manner.

Accordingly, the judgment of the Circuit Court of Kanawha County is affirmed.

McHugh, J. and Brotherton, J. would reverse the circuit court's order and reinstate the original conviction.

Affirmed.