504 S.E.2d 165

**STATE ex rel. James McCLURE, Appellant,**

v.

**George TRENT, Warden, West Virginia Penitentiary, Appellee.**

No. 24202.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1998.

Decided June 22, 1998.

George Castelle, Chief Public Defender, Charleston, for the Appellant.

William C. Forbes, Prosecuting Attorney, Mary Beth Kershner, Assistant Prosecuting Attorney, Charleston, for the Appellee.

PER CURIAM: [1]

This action is before this Court upon an appeal from a final order of the Circuit Court of Kanawha County entered on November 7, 1996. The circuit court denied a petition for writ of habeas corpus filed by the appellant, James McClure, seeking to have his convictions of first degree murder and malicious wounding reversed on the basis of alleged fraudulent testimony provided at his trial by former State Trooper Fred Zain. On appeal, appellant contends that the circuit court erred by denying him the opportunity to determine whether exculpatory evidence was withheld by the State prior to his trial. Appellant also contends that absent Trooper

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

Zain's testimony, the remaining evidence presented at his trial was not sufficient to sustain his convictions.

This Court has before it the petition for appeal, all matters of record including the record from appellant's criminal trial, and the briefs and argument of counsel. For the reasons set forth below, this Court affirms the final order.

## I.

The appellant was convicted on February 7, 1987, of the first degree murder of Marcus Rivers and the malicious wounding of Sandra Rivers.[2] At trial, the evidence showed that the victims were found in their home on August 8, 1986, five days after they had been shot. According to the State medical examiner, Marcus Rivers died instantly after receiving a bullet wound to the head. Sandra Rivers was shot twice in the head and suffered brain damage and memory loss. As a result, Ms. Rivers was not aware that she had been shot until a friend came to her home, discovered the crimes, and called the police.

Ms. Rivers testified that on Sunday, August 3, she took Marcus to a playground in the afternoon. She remembered arriving at home that evening and going to take a shower. She saw the appellant coming down the hallway as she went into the bathroom.[3] Marcus was sitting on the floor just outside the bathroom door. Ms. Rivers recalled getting dizzy in the bathtub and falling out.[4] When she came out of the bathroom, she found Marcus in the hallway, and thinking he

was asleep, put him in his bed.[5] Ms. Rivers said that appellant was still in the house at that time, and she asked him to get her some alcohol for her jaw which was hurting. She did not remember much about the following week.

Fred Zain, former state trooper and serologist at the West Virginia State Police Serology Laboratory, prepared forensic reports on thirty-nine items taken from the victims' home which contained blood stains. At appellant's trial, Trooper Zain testified that he found blood stains on several of the items. He identified which victim was the source of each blood stain. Based, in part, on Trooper Zain's testimony, Mark Carlson, a detective with the City of Charleston Police Department, testified regarding the location of various blood-stained exhibits in the victims' home to explain the manner in which the crimes were committed. After hearing several days of testimony and viewing numerous exhibits, the jury convicted appellant of malicious wounding and first degree murder without a recommendation of mercy.

On March 11, 1994, pursuant to this Court's decision in *In the Matter of an Investigation of the West Virginia State Police Crime Laboratory, Serology Division,* 190 W.Va. 321, 438 S.E.2d 501 (1993) (hereinafter *Zain I* )[6], appellant filed a petition for writ of habeas corpus with this Court. The case was remanded to the circuit court which denied the petition on April 24, 1996. The circuit court found that because the Zain evidence

---

**2.** Sandra Rivers was the biological aunt and adoptive mother of Marcus Rivers who was four years old at the time of his death.

**3.** Ms. Rivers and the appellant had dated for more than a year. However, the day before she was shot, Ms. Rivers told a friend that she was going to break up with the appellant that evening. At trial, Ms. Rivers testified that she ended her relationship with the appellant on Saturday, August 2.

**4.** The police found a considerable amount of blood in the bathroom along with three of Mrs. Rivers' teeth. Hair marks in the blood suggested that Ms. Rivers' head had been beaten against the toilet. Serological testing and subsequent DNA testing ordered as a part of the habeas corpus proceeding below indicated that the blood was that of Ms. Rivers.

**5.** The police also found a large amount of blood outside the bathroom door. The serological tests performed by Trooper Zain as well as the DNA testing matched the blood with that of Marcus Rivers.

**6.** *Zain I* was an extraordinary proceeding arising out of allegations of misconduct on the part of Trooper Zain. A five month investigation revealed that Trooper Zain had a long history of falsifying evidence as a serology expert to obtain convictions for the prosecution. As a result of this revelation, this Court provided for habeas corpus review of all convictions in which Trooper Zain performed serological testing and/or testified.

did not inculpate the appellant, the remaining evidence was obviously sufficient to sustain the jury's verdict. The circuit court also found that the Zain evidence could not have prejudiced the jury because Trooper Zain's testimony that blood found at the scene belonged to the two victims was exactly what anyone would expect under the circumstances.[7]

On August 23, 1996, appellant filed a "Motion to Set Aside the Judgment" which denied the habeas relief and a "Motion for Production of Reports and Notes within the Possession of Law Enforcement Agencies." These motions were based on allegedly newly discovered evidence of a pattern of withholding exculpatory evidence in habeas corpus cases based on Zain evidence in Kanawha County. Appellant argued that full inquiry into this matter was necessary to adequately test the sufficiency of the remaining evidence in his case once the Zain evidence was discarded. As reflected in the final order, the circuit court found that the proper procedure to assert the new grounds for relief would be the filing of a new petition for writ of habeas corpus. Additionally, the court found the allegations set forth in the motions were insufficient to warrant the relief requested. Accordingly, the motions were denied.

## II.

In Syllabus Point 1 of *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975), we held that: "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." *See also* Syllabus Point 2, *State ex rel. Kidd v. Leverette*, 178 W.Va. 324, 359 S.E.2d 344 (1987). More recently, we have stated that:

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review.

We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995). *See also* Syllabus Point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

Appellant contends that the circuit court erroneously denied his "Motion to Set Aside Judgment" and "Motion for Production of Reports and Notes Within the Possession of Law Enforcement Agencies" because a fair weighing of the sufficiency of the remaining evidence cannot be conducted in a Zain case if evidence of innocence was withheld by the State.[8] The basis for appellant's argument is the discovery that exculpatory evidence was withheld by the State in two other criminal cases in Kanawha County. Appellant maintains that this discovery reveals a pattern of withholding exculpatory evidence in Kanawha County cases involving Trooper Zain, and therefore, he is entitled to determine whether any evidence was withheld in his case.

Appellant's petition for writ of habeas corpus, filed in March 1994, was based solely on the contention that Trooper Zain helped wrongfully convict him. Consequently, unlike the traditional omnibus habeas corpus hearing, the only issue considered at the hearing below was whether the evidence presented at trial, independent of the forensic evidence presented by Trooper Zain, would have been sufficient to support the verdict. *See Zain I*, 190 W.Va. at 326, 438 S.E.2d at 506. The circuit court denied appellant's post-judgment motions, in part, because he was asserting new grounds for relief in that he contended that the State may have withheld exculpatory evidence prior to his trial.

7. The circuit court noted that it had ordered DNA testing of certain exhibits of the State, as well as fresh blood samples of the appellant and Sandra Rivers consistent with the provisions of *Zain I*. The test results were not contrary to the results of the serological tests performed by Trooper Zain. Moreover, a second testing also yielded results consistent with Zain's testimony.

8. As discussed in more detail below, a review of a case in which Trooper Zain testified requires removing the Zain evidence from consideration and assessing the remaining evidence to determine whether it would have been sufficient to sustain the defendant's convictions. *See* Syllabus Point 3, *Zain I*.

The circuit court concluded that the appellant should have filed a new petition for a writ of habeas corpus asserting his new grounds for relief. We agree.

■ *W.Va.Code* 53–4A–2 (1967) requires a petitioner seeking a writ of habeas corpus to "specifically set forth the contention or contentions and grounds in fact or law in support thereof upon which the petition is based, and clearly state the relief desired." The appellant never alleged that the State had withheld exculpatory evidence in his original petition, nor did he later seek to amend his petition to include this allegation. Even if we were to characterize appellant's post judgment motions as an attempt to amend his petition, such an amendment was not timely made. Pursuant to *W. Va.Code* 53–4A–6 (1967), a petition for writ of habeas corpus cannot be amended after a final order has been entered by the circuit court.[9] *See also Pyles v. Coiner*, 152 W.Va. 473, 476, 164 S.E.2d 435, 437–38 (1968).

■ Furthermore, in Syllabus Point 1 of *Coiner*, this Court held that: "All judgments or decrees become final at the expiration of the term in which they are entered or after entry thereof in vacation." In Syllabus Point 2 of *Coiner*, we further stated that: "The general rule is that a valid final judgment cannot be set aside by the trial court after the term has adjourned or after entry thereof in vacation." In this case, the circuit court entered the final order on April 24, 1996, and the appellant filed his motions on August 23, 1996. Pursuant to Rule XVIII(m) of the West Virginia Trial Court Rules for Trial Courts of Record, the Circuit Court of Kanawha County began a new term on May 13, 1996. Thus, the circuit court was without authority to grant the appellant the relief he sought in his motions.

■ Notwithstanding the fact that appellant's motions could have been denied for procedural reasons alone, the circuit court also declined to reopen the case because the appellant did ·not present any evidence to support his allegation that exculpatory evidence might have been withheld from him. While appellant claims that exculpatory evidence has been withheld in other criminal cases involving Zain evidence in Kanawha County and has provided documentation in support thereof, he has failed to present any evidence that exculpatory evidence was withheld in his own case.

We agree with the circuit court's conclusion that the allegations set forth in the appellant's motions and the attachments thereto were insufficient as a matter of law to warrant the relief requested. Unquestionably, a defendant is entitled to any exculpatory evidence which is in the possession of the prosecution. However, if the rules and standards of professional conduct are not enough to make attorneys disclose such evidence, then no order from this Court will accomplish that task.

■ Appellant also contends that even without a determination of whether exculpatory evidence was withheld, when the Zain evidence is removed from consideration, the remaining evidence is insufficient to sustain his convictions. In Syllabus Point 3 of *Zain I*, we held:

'Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not

9. *W.Va.Code* 53–4A–6 provides:

Within such time as may be specified in the writ or as the court may fix, the State shall make its return. No other or further pleadings shall be filed except as the court may order. At any time prior to entry of judgment on the writ in accordance with the provisions of this article, the court may permit the petitioner to withdraw his petition. The court may make such orders as to amendment of the petition or return or other pleading, as to pleading over, or filing other or further pleadings, or extending the time for the making of the return or the filing of other pleadings, as shall seem to the court to be ate, meet and reasonable. In considering the petition, the return or other pleading, or any amendment thereof, substance and not form shall control.

harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.' Syllabus Point 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980).

The record indicates that in addition to the testimony of Trooper Zain, the State presented testimony from fifty other witnesses at appellant's trial. The evidence showed that the victims were shot on Sunday, August 3, 1986, but the crimes were not discovered until Friday, August 8, 1986, when some of Ms. Rivers' friends and co-workers became concerned that something was wrong with her. Once the police began their investigation, they realized that Ms. Rivers was not aware that she had been shot, nor did she understand that her son had been killed.

The victims were shot with a Raven Arms .25 caliber automatic pistol. The gun, which belonged to Ms. Rivers, was found in a recipe box on a dresser in her bedroom. However, two of appellant's friends testified that on Monday, August 4, appellant had the same gun in his possession, and he showed it to them when he gave them a ride. On the same day, appellant asked another friend if she had heard about him killing anyone. He also speculated on his need for a bail bondsman. This conversation was overheard by at least two other people. Appellant also told another friend that he and Ms. Rivers had argued, and he had "smacked" her and left with her car. Appellant was in fact seen driving Ms. Rivers' car during that week. He abandoned the car in an alley shortly before he was arrested and buried the car keys in a friend's yard.

The evidence also disclosed that appellant was seen at Ms. Rivers' house during the week after she was shot. On Sunday evening, around 9:30 p.m., Margie Moore, appellant's sister, went to Ms. Rivers' house to get her car which appellant had borrowed. Ms. Moore was accompanied by her boyfriend and her stepson. Although they just took the car out of the driveway, they did observe the appellant standing on Ms. Rivers' porch.

On Wednesday, August 6, appellant was seen at Ms. Rivers' home by a mutual friend.

The evidence further revealed that when appellant was initially questioned about these crimes, he told the police that he had left Ms. Rivers' home on August 3, between 5:00 p.m. and 7:00 p.m., and had not returned. Appellant also denied driving Ms. Rivers' car. However, when appellant gave a second statement to the police a couple of days later, he stated that he had returned to Ms. Rivers' house on Monday morning, August 4. He said that he could tell that Ms. Rivers had been shot and that Marcus was dead, but she told him not to worry about it. Appellant maintained that Ms. Rivers told him to take her car downtown and leave it there. Appellant also told the police that he returned to the house on Tuesday and left on Wednesday.

To summarize, the appellant was seen in the victims' house shortly before and after the crimes occurred. The appellant had the murder weapon in his possession after the victims' were shot but prior to the police finding the gun in the victims' home. The appellant was observed driving Ms. Rivers' car during the week before the crimes were discovered. Finally, the appellant suggested to his friends that he might be accused of a crime in the immediate future. Although Ms. Rivers was unable to identify the appellant as the perpetrator because of the nature of her injuries, the evidence, excluding Trooper Zain's testimony, was clearly sufficient to sustain appellant's convictions.

■ Having determined that the evidence was sufficient, we now consider whether the Zain evidence had any prejudicial effect on the jury. Trooper Zain testified that he examined thirty-nine items that were taken from the victims' house and found that several of the items contained blood stains. He analyzed each item and identified which victim was the source of each blood stain. We agree with the circuit court's conclusion that Trooper Zain's testimony was not prejudicial because everyone would expect there to be blood from the victims at the crime scene.

This case is unique because Trooper Zain did not use serological evidence to identify the appellant as the perpetrator or even link the appellant to the scene of the crime. In

344

fact, Trooper Zain did not inculpate the appellant in any way.[10] His testimony was consistent with the nature of the crimes as both victims lost a great deal of blood throughout their home. More importantly, the re-testing of seven of the items which had been subjected to conventional serology testing by Trooper Zain yielded results consistent with his testimony. Accordingly, the Zain evidence could not have prejudiced the jury.

Based upon all of the above, the final order of the Circuit Court of Kanawha County is affirmed.

Affirmed.

**10.** In *Zain I*, we adopted a report filed by the Honorable James O. Holiday, in which he concluded that " '[A]s a matter of law, any testimonial or documentary evidence offered by Zain at any time in any criminal prosecution should be deemed invalid, unreliable, and inadmissable in determining whether to award a new trial in any subsequent habeas corpus proceeding.' " 190 W.Va. at 326, 438 S.E.2d at 506. Therefore, even though Trooper Zain's testimony did not inculpate the appellant, he was entitled to pursue the matter in a habeas corpus proceeding. Nonetheless, we consider the fact that the Zain evidence was not inculpatory relevant to a determination of whether Trooper Zain's testimony was prejudicial.