505 S.E.2d 417

**James STUCKEY, Petitioner Below, Appellant,**

v.

**George TRENT, Warden, and West Virginia Division of Corrections, Respondents Below, Appellees.**

No. 24528.

Supreme Court of Appeals of West Virginia.

Submitted June 2, 1998.

Decided July 2, 1998.

James B. Zimarowski, Morgantown, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, for Appellees.

WORKMAN, Justice:

This case is before this Court upon an appeal from the final order of the Circuit Court of Marion County, West Virginia, entered on February 6, 1997. As reflected in the order, the circuit court denied the appellant, James Stuckey, habeas corpus relief with regard to his 1989 convictions of seven counts of murder of the first degree. The convictions followed a jury trial conducted in the underlying case of *State v. Stuckey,* no. 89–F–90 (Marion County). The verdict, as to each count, was returned without a recommendation of mercy. The appellant received seven consecutive life sentences for the murders.

This appeal was granted upon the limited issue of whether the trial court in the underlying case committed error in not requiring the State to elect, upon the appellant's objection, either: (1) a willful, deliberate and premeditated murder theory or (2) a felony-murder theory, in pursuing the convictions. Rather, both theories were reflected in the trial court's charge to the jury and in the State's closing argument. The appellant contends that the State's failure to elect rendered the trial unfair and constituted a denial of his right to due process of law. U.S. Const. amend. V, XIV; W.Va. Const. art. III, sec. 10. In the denial of habeas corpus relief, the circuit court concluded that the appellant's contention was without merit.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Upon a careful review of this matter, and particularly in view of the well-reasoned letter of opinion of the circuit court dated January 27, 1997, this Court also concludes that the contention of the appellant is without merit. Accordingly, the final order of the circuit court denying habeas corpus relief is affirmed.

I.

On April 21, 1989, shortly after 3:00 a.m., a police officer of the City of Fairmont, in Marion County, discovered a fire emanating from a four-story building known as the Tropea Apartment Building. The officer immediately radioed for assistance, and within minutes firefighting and police units arrived at the scene. However, in spite of the heroic efforts of many who were present that morning, seven occupants of the building died from burn injuries and smoke and soot inhalation.

The record indicates that, from the beginning, authorities at the scene suspected that the fire was the result of arson. In particular, several firefighters called by the State at trial testified that the color of the smoke and flames issuing from the building suggested that a flammable liquid or accelerant had been involved. Arson was confirmed when a subsequent investigation revealed that the fire originated from the lighting of gasoline poured in a stairwell of the building. In addition, the investigation revealed that gasoline had been poured near several apartment doors within the building.

Among those questioned by the police at the scene on April 21, 1989, was the appellant. Although initially indicating no involvement, the appellant subsequently executed a written confession at Fairmont police headquarters in which he admitted to starting the fire. The confession was ruled admissible by the trial court and became a significant part of the State's case. Its validity is not an issue before this Court. No motive for starting the fire was set forth in the confession. The record indicates, however, that the appellant may have had a dispute with one of the residents of the building.

The appellant was arrested upon confessing to starting the fire. Thereafter, he was indicted by a Marion County grand jury for murder of the first degree. Specifically, the indictment included a count for each of the seven victims and, citing *W.Va.Code,* 61–2–1 [1987], alleged that the appellant committed each murder (1) by a willful, deliberate and premeditated killing or (2) in the commission of, or attempt to commit, arson. In view of the magnitude of the charges against the

appellant and the potential community pressure upon a jury in Marion County, the trial court granted the appellant's motion for a change of venue. W.Va. R.Crim. P. 21. The case was transferred to the Circuit Court of Wood County, West Virginia.

The trial began in Wood County on September 25, 1989. The State called a number of witnesses who related the above events to the jury, and the appellant's confession was admitted into evidence. Importantly, the State never charged the appellant with arson *per se* ; nor did the State proceed against the appellant at trial upon that offense. *W.Va. Code*, 61–3–1 [1935]. Instead, arson was the basis of the State's felony-murder theory which, as stated above, was advanced as an alternative to the theory that the appellant committed each murder by a willful, deliberate and premeditated killing.

The appellant, on the other hand, relied upon the defense of alibi. W.Va. R.Crim. P. 12.1. In particular, the appellant testified at trial that he was in a Fairmont bar known as Kathy's Talk of the Town at the time the State alleged the fire began. According to the appellant, he observed the fire upon leaving the bar and went to the scene. Although specific times varied, other witnesses confirmed the appellant's presence in the bar on the night in question.

At the close of the evidence, the trial court overruled the appellant's objection to the State's failure to elect either a willful, deliberate and premeditated murder theory of the case or a felony-murder theory based upon arson. Consequently, both theories were reflected in the trial court's charge to the jury and in the State's closing argument. As the prosecutor told the jury: "We go with felony-murder or first degree murder, either option." The jury returned guilty verdicts against the appellant on seven counts of murder of the first degree. The verdict forms made no distinction between the State's premeditated and felony-murder theories, and a verdict concerning the offense of arson *per se* was not an option.[1]

The appellant's post-trial motions for relief were denied by the trial court, and on March 23, 1990, the appellant received seven consecutive life sentences for the murders. *W.Va. Code*, 61–2–2 [1965]. In July 1991, a direct appeal from the convictions was refused by this Court.

Subsequently, the appellant filed a habeas corpus petition in the circuit court pursuant to *W.Va.Code*, 53–4A–1 [1967], *et seq.* The circuit court conducted evidentiary hearings thereon, and, pursuant to the final order of February 6, 1997, denied relief. In so ruling, the circuit court rejected the appellant's contention that the State's failure to elect between the two theories rendered the trial unfair and constituted a denial of due process. Specifically, in the January 27, 1997, letter of opinion accompanying the final order, the circuit court emphasized that the State's two theories had been distinguished for the jury in the charge given by the trial court and that the evidence at trial of the appellant's guilt was "somewhat overwhelming."

## II.

In syllabus point 1 of *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976), this Court held: "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." *See also, Wilson v. Hun,* 193 W.Va. 639, 641, 457 S.E.2d 662, 664 (1995); syl. pt. 2, *State ex rel. Kidd v. Leverette,* 178 W.Va. 324, 359 S.E.2d 344 (1987). That principle is, of course, consistent with our observation that rulings upon questions of law are reviewed *de novo. State v. Honaker,* 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994); *State v. Stuart,* 192 W.Va. 428, 433, 452 S.E.2d 886, 891 (1994).

The appellant herein seeks a new trial. Specifically, in contending that the trial court committed error in not requiring the State to

---

1. The verdict form set forth the following options for the jury with regard to each of the seven counts of the indictment: (1) not guilty, (2) guilty of murder of the first degree, (3) guilty of murder of the first degree, with mercy, (4) guilty of second degree murder, (5) guilty of voluntary manslaughter and (6) guilty of involuntary manslaughter.

elect, upon the appellant's objection, either a premeditated murder theory or a felony-murder theory, the appellant emphasizes the fact that there is no way to discern from the resulting verdicts which theory the jury relied upon in finding the appellant guilty. Thus, the appellant suggests that he was prejudiced by having to defend against both theories throughout the trial. In addition, the appellant asserts that appeals from convictions in such circumstances are hampered because an appellate court is left to speculate with regard to which theory the jury adopted. In fact, the appellant asserts, to the extent that individual jurors in such cases may be inclined to rely upon separate theories of murder advanced by the State, a criminal defendant's right to a unanimous jury verdict is violated. *See,* W.Va. R.Crim. P. 31(a) stating that "[t]he verdict shall be unanimous." At least, the appellant suggests, special jury verdict forms should have been utilized in his trial in order to distinguish between the two theories.

The State, on the other hand, contends that premeditated murder and felony-murder are not independent offenses. Rather, they are alternative means of committing the statutory crime of murder of the first degree. *W.Va.Code,* 61-2-1 [1987]. Therefore, according to the State, an election between the two theories was not required, especially since the jury was instructed upon both murder theories during the appellant's trial. Moreover, the State asserts that the appellant's alibi defense was the same at trial under both the State's premeditated murder theory and the felony-murder theory and that, consequently, the appellant was not prejudiced by the State's advancement of those theories. In addition, the State asserts, inasmuch as the appellant was never charged with arson *per se,* special jury verdict forms were not required.

■ In this State, murder of the first degree is defined by statute. As *W.Va.Code,* 61-2-1 [1987], provides: "Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, sexual assault, robbery or burglary, is murder of the first degree. All

other murder is murder of the second degree." As this Court explained in syllabus point 6 of *State v. Sims,* 162 W.Va. 212, 248 S.E.2d 834 (1978): "W.Va.Code, 61-2-1, enumerates three broad categories of homicide constituting first degree murder: (1) murder by poison, lying in wait, imprisonment, starving; (2) by any wilful, deliberate and premeditated killing; (3) in the commission of, or attempt to commit, arson, rape, robbery or burglary." *See also, State v. Harper,* 179 W.Va. 24, 26-27, 365 S.E.2d 69, 71-72 (1987); *State v. Hatfield,* 169 W.Va. 191, 198 n. 2, 286 S.E.2d 402, 408 n. 2 (1982).

Two of those categories, i.e., those concerning a premeditated killing and felony-murder were discussed by this Court in *State v. Giles,* 183 W.Va. 237, 395 S.E.2d 481 (1990). In *Giles,* the defendant was indicted for murder of the first degree and sexual assault in the first degree with regard to the assault and death of a 73 year old woman. At the conclusion of the trial, the defendant was convicted of both offenses. During the trial, the State, in *Giles,* relied heavily upon a felony-murder theory based upon sexual assault. The trial court, nevertheless, instructed the jury upon both the premeditated killing category of murder of the first degree and the felony-murder category. Upon appeal, the defendant asserted that his conviction of murder of the first degree, based upon a felony-murder theory, should have precluded his separate conviction of sexual assault.

■ In *Giles,* this Court agreed and cited syllabus point 8 of *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983), which holds: "Double jeopardy prohibits an accused charged with felony-murder, as defined by W.Va.Code sec. 61-2-1 (1977 Replacement Vol.), from being separately tried or punished for both murder and the underlying enumerated felony." *See also,* syl. pt. 1, *State v. Elliott,* 186 W.Va. 361, 412 S.E.2d 762 (1991); syl. pt. 10, *State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991); syl. pt. 1, *State v. Tesack,* 181 W.Va. 422, 383 S.E.2d 54 (1989). Thus, syllabus point 9 of *Giles* states:

In a prosecution for first-degree murder, the State must submit jury instructions

which distinguish between the two categories of first-degree murder—willful, deliberate, and premeditated killing and felony-murder—if, under the facts of the particular case, the jury can find the defendant guilty of either category of first degree murder. When the State also proceeds against the defendant on the underlying felony, the verdict forms provided to the jury should also reflect the foregoing distinction so that, if a guilty verdict is returned, the theory of the case upon which the jury relied will be apparent.

*See also,* syl. pt. 5, *State v. Hottle,* 197 W.Va. 529, 476 S.E.2d 200 (1996); syl. pt. 1, *State v. Walker,* 188 W.Va. 661, 425 S.E.2d 616 (1992). Accordingly, as *Giles* indicates, the State may ordinarily pursue both murder theories at trial in seeking a conviction of murder of the first degree but may run into difficulty where a separate conviction upon the underlying felony is also sought.

In *Walker, supra,* rescuers at a residential fire discovered the charred body of a victim who had been shot in the head. The evidence indicated that, although the gunshot wound would have killed the victim, the specific cause of death was smoke and soot inhalation. Subsequently, the defendant, in *Walker,* was convicted by a jury of murder of the first degree and arson. During the defendant's trial, the State initially advanced a theory of premeditated murder. At the close of the evidence, however, the State "offered instructions only on felony murder and arson, not premeditated murder." 188 W.Va. at 666, 425 S.E.2d at 621. This Court held, in *Walker,* that the defendant's convictions of both "felony murder" and the separate offense of arson were impermissible under syllabus point 8 of *State v. Williams, supra.* The arson conviction in *Walker,* like the sexual assault conviction in *Giles,* was, therefore, improper.

With regard to the murder charge, however, this Court noted, in *Walker,* that the defendant was not harmed by the State's election at the close of the evidence to proceed only upon a felony-murder theory. As the *Walker* opinion observes:

In Mr. Walker's situation, we fail to see how he was harmed by the State's election to charge him only with felony murder. Mr. Walker was not precluded from presenting any defenses. He defended both the arson charge and the premeditated murder charge, *with an alibi defense.* Although Mr. Walker could have been prejudiced had he chosen to make a self-defense claim (or some other justifiable homicide defense where he would have had to admit the killing), Mr. Walker was not deprived of the opportunity to raise any defenses[.]

188 W.Va. at 667, 425 S.E.2d at 622 (emphasis added).

▄▄▄ Thus, with regard to situations where the State, in fact, makes an election in a criminal trial between a premeditated killing theory and a felony-murder theory, syllabus point 2 of *Walker* holds that the State need not elect whether to proceed upon either theory "until the close of all evidence; however, a defendant may make a motion to force an earlier election if he can make a strong, particularized showing that he will be prejudiced by further delay in electing." Accordingly, syllabus point 3 of *Walker* states: "The granting of a motion to force the State to elect rests within the discretion of the trial court, and such a decision will not be reversed unless there is a clear abuse of discretion."

Nevertheless, in *Walker,* this Court noted that the circumstances in *Giles, supra,* were different because, in that case, the trial court instructed the jury upon both the premeditated killing category of murder of the first degree and the felony-murder category. 188 W.Va. at 666, 425 S.E.2d at 621. As the *Walker* opinion observes: "[O]ur holding in *Giles, supra,* clearly indicates that in appropriate circumstances, *both theories may be presented to the jury with proper instructions.*" 188 W.Va. at 666–67, 425 S.E.2d at 621–22. (emphasis added) [2]

2. More specifically, the *Walker* opinion states:
 A defendant, however, has the right to ask for an election and to ask for an earlier election than at the close of all the evidence, but

the court need order the election only if the defendant can make a strong, particularized showing of how he will be prejudiced if the prosecutor either does not elect at all or waits

Consistent with the opinions of this Court in *Giles* and *Walker* is the decision of the Supreme Court of the United States in *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). In *Schad*, the defendant, found with a murder victim's automobile and other belongings, was convicted, in Arizona, of first degree murder. During the trial, the prosecutor advanced both a premeditated killing theory and a felony-murder theory in pursuing the conviction, and instructions upon both theories were given to the jury. The jury did not have the option of considering the separate offenses of robbery or theft. The issue, in *Schad*, was whether the first degree murder conviction, under jury instructions which did not require agreement upon whether the defendant was guilty of premeditated murder or felony-murder, violated the principles of due process. Significantly, the Arizona first degree murder statute under review, in *Schad*, was comparable to *W.Va.Code*, 61–2–1 [1987].[3]

In *Schad*, the Arizona Supreme Court affirmed the conviction, rejecting the defendant's contention that the trial court erred in not requiring the jury to agree on a single theory of first degree murder. As the Arizona Supreme Court stated: "In Arizona, first degree murder is only one crime regardless whether it occurs as a premeditated murder or a felony murder." 501 U.S. at 629, 111 S.Ct. at 2496, 115 L.Ed.2d at 564.

Upon further appeal, the Supreme Court of the United States affirmed the Arizona Supreme Court and concluded that Arizona's characterization of first degree murder as a single crime, as to which a jury need not agree on one of the alternative statutory theories of a premeditated killing or felony-murder, was not unconstitutional. Specifical-

ly, in *Schad*, the Supreme Court of the United States observed:

Although American jurisdictions have modified the common law by legislation classifying murder by degrees, the resulting statutes have in most cases retained premeditated murder and some form of felony murder ... as alternative means of satisfying the mental state that first-degree murder presupposes. * * * Whether or not everyone would agree that the mental state that precipitates death in the course of robbery [for example] is the moral equivalent of premeditation, it is clear that such equivalence could reasonably be found, which is enough to rule out the argument that this moral disparity bars treating them as alternative means to satisfy the mental element of a single offense.

501 U.S. at 640–41, 644, 111 S.Ct. at 2501–02, 2503–04, 115 L.Ed.2d at 571, 573.

In the circumstances before us, the State, as in *Schad*, advanced both a premeditated killing theory and a felony-murder theory, and instructions upon both theories were given to the jury. Furthermore, just as the jury, in *Schad*, did not have the option of considering any separate underlying offenses, the jury in the appellant's trial did not have the option of convicting him of arson. The appellant was never charged with arson with regard to the Tropea Apartment Building. This matter, therefore, lacks the complexity present in *Giles* and *Walker*, both of which involved a charge against the accused upon the underlying felony and both of which involved an ultimate reliance by the State upon a felony-murder theory.

Here, as foreshadowed by the language of the indictment, the State asserted at trial that the deaths of April 21, 1989, resulted

---

until the end of the trial to decide what the exact charges will be. It is within the discretion of the circuit court whether to force the prosecutor to elect, and such a decision will not be reviewed unless the court abuses his discretion.

188 W.Va. at 667, 425 S.E.2d at 622.

**3.** As set forth in *Schad*, the Arizona statute provided:

A murder which is perpetrated by means of poison or lying in wait, torture or by any other kind of wilful, deliberate or premeditated kill-

ing, or which is committed in avoiding or preventing lawful arrest or effecting an escape from legal custody, or in the perpetration of, or attempt to perpetrate, arson, rape in the first degree, robbery, burglary, kidnapping, or mayhem, or sexual molestation of a child under the age of thirteen years, is murder of the first degree. All other kinds of murder are of the second degree.

501 U.S. at 628 n. 1, 111 S.Ct. at 2495 n. 1, 115 L.Ed.2d at 563 n. 1.

from either premeditated murder or felony-murder, based upon arson. As the above authorities indicate, the State was authorized to present its case for murder of the first degree in that manner, and, as the circuit court later confirmed during the habeas corpus proceeding, the two theories were distinguished for the jury in the trial court's charge, in conformity with syllabus point 9 of *Giles.* Moreover, as the State suggests, the appellant's alibi defense concerning the events of April 21, 1989, was the same under both the State's premeditated murder theory and the felony-murder theory, and, thus, as the record reveals, the appellant was not prejudiced by the State's advancement of both theories. *See, Walker, supra.* Nor, in the absence of a charge of arson, was the jury required to distinguish in its verdict the State's theories of murder of the first degree. *Cf., Gorman v. Steed,* 1 W.Va. 1 (1864), stating that a general verdict "finds every fact necessary to authorize it." We, therefore, conclude that the appellant's contention, that the State's failure to elect between the two theories rendered the trial unfair and constituted a denial of due process, is without merit.

 In particular, this Court holds that, in West Virginia, (1) murder by any willful, deliberate and premeditated killing, and (2) felony-murder constitute alternative means under *W.Va.Code,* 61–2–1 [1987], of committing the statutory offense of murder of the first degree; consequently, the State's reliance upon both theories at a trial for murder of the first degree does not, *per se,* offend the principles of due process, provided that the two theories are distinguished for the jury through court instructions; nor does the absence of a jury verdict form distinguishing the two theories violate due process, where the State does not proceed against the defendant upon the underlying felony.

The record herein demonstrates that the trial court did not abuse its discretion in refusing to require the State to elect between the two theories. Syl. pt. 3, *Walker, supra.* Accordingly, this Court is of the opinion that the circuit court ruled correctly in subsequently denying the appellant habeas corpus relief. Upon all of the above, therefore, the

final order of the Circuit Court of Marion County, entered on February 6, 1997, is affirmed.

Affirmed.